United States District Court
Southern District of Texas
**ENTERED**
July 06, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HUMBERTO RODRIGUEZ, JR. | § | |
|     Petitioner | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-15-113 |
| | § | |
| | § | |
| WILLIAM STEPHENS | § | |
| DIRECTOR, TEXAS DEPARTMENT | § | |
| OF CRIMINAL JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION | § | |
|     Respondent | § | |

**REPORT & RECOMMENDATION**

Petitioner, a state prisoner proceeding pro se, filed an application for relief pursuant to 28 U.S.C. § 2254. (Dkt. Entry No. 1.) This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b). Pending before the Court is Respondent's Motion for Summary Judgment. (Dkt. Entry No. 19.) Petitioner filed a response to the dispositive motion. (Dkt. Entry No. 20.) This case is ripe for disposition on the record.

After careful review of the record and the applicable law, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Dkt. Entry No. 19) be **GRANTED** to the extent it is consistent with this Report, Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice because Claims 2 through 6 are time-barred and Claim 1 does not provide a meritorious ground for relief, and the case be closed.

**I. BACKGROUND**

Petitioner is currently in the custody of the Texas Department of Criminal Justice ("TDCJ")

1

pursuant to a judgment and sentence from the 92nd Judicial District Court of Hidalgo County, Texas, in criminal cause number CR-0403-00-A. (Dkt. Entry No. 1 at 1.)[1] According to the decision by the Texas Court of Criminal Appeals ("TCCA") in Petitioner's direct appeal, Petitioner "participated in a conspiracy to kidnap Hector Salinas, a potential government witness in a pending federal drug trial," who "was taken from his used-clothing store in McAllen, Texas, and transported to Mexico, where he was tortured and killed." *Rodriguez v. State*, 146 S.W.3d 674, 675 (Tex. Crim. App. 2004).

Petitioner pleaded not guilty and proceeded to trial. (Dkt. Entry No. 1 at 2.) In October 2000, Petitioner was convicted by a jury of capital murder and aggravated kidnapping. (*Id.* at 1–2.) The jury sentenced Petitioner to a term of life in prison for the capital murder conviction and 28 years for the aggravated kidnapping conviction. *Rodriguez*, 146 S.W.3d at 675.

Petitioner filed a direct appeal, and, in 2003, the Thirteenth Court of Appeals reversed the murder conviction on jurisdictional grounds because the murder did not occur in Texas, but in Mexico. *Id.* At the same time, the Thirteenth Court of Appeals affirmed the kidnapping conviction. *Id.* The State filed a petition for discretionary review, and the TCCA agreed to review the case. *Id.* In 2004, the TCCA reversed the decision by the Thirteenth Court of Appeals, holding that the "kidnapping was the required aggravating 'nature of conduct' element that elevated the offense from murder to capital murder" and that, because "[t]he kidnapping occurred in Texas, Texas has territorial jurisdiction over the offense." *Id.* at 677. On remand, and following the reasoning of the TCCA, the Thirteenth Court of Appeals overruled Petitioner's point of error, which asserted that

---

[1] Page numbers refer to the electronically-assigned (PDF) page numbers via CM-ECF when the entire, relevant file is opened.

none of the elements of the capital murder, including the kidnapping, occurred in Texas, and the court affirmed the trial court's judgment. *Rodriguez v. State*, No. 13-00-771-CR, 2007 WL 3037910, at *1 (Tex. App.—Corpus Christi 2007, no pet.) (not designated for publication). The direct-appeal process ended at that point.

In April 2014, Petitioner filed a pro se state application for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure, in which he challenged his convictions on many grounds. (*See* Dkt. Entry No. 18-17 at 12–33 [State Ct. Records].) The TCCA denied all of Petitioner's habeas claims, except one. *Ex parte Rodriguez*, WR-81,853-01, 2014 WL 6788080, at *1 (Tex. Crim. App. Nov. 26, 2014), *op. withdrawn and superseded on denial of reh'g*. The TCCA *granted* relief on Petitioner's claim that his convictions for both capital murder and aggravated kidnapping violated the prohibition against double jeopardy. *Id.* In its ruling, the TCCA stated as follows: "The judgment in Count Two of Cause No. CR–0403–00–A in the 92nd District Court of Hidalgo County is set aside, and the cause is remanded to the trial court with instructions to enter a judgment o
f *acquittal* as to Count Two [aggravated kidnapping]." *Id.* (emphasis added).

Thereafter, Petitioner filed a motion requesting that the TCCA "amend" its habeas decision, arguing that the TCCA's order directing the trial court to "acquit" Petitioner on the charge of aggravated kidnapping compelled an acquittal on the capital murder conviction as well, due to a lack of territorial jurisdiction because the kidnapping was an element of the capital murder charge. (Dkt. Entry No. 18-14 at 2–3.) The TCCA denied Petitioner's pro se motion on January 21, 2015. (Dkt. Entry No. 18-15 at 1–2.) In denying the motion, the TCCA withdrew its prior opinion and issued a superseding opinion that ordered the following: "The judgment in Count Two [aggravated

3

kidnapping] of Cause No. CR-0403-00-A in the 92nd District Court of Hidalgo County is *vacated*."

(*Id.* at 2.) (emphasis added). The TCCA denied the motion and issued the superseding opinion before a mandate for the original habeas decision ever issued. That marked the end of Petitioner's state proceeding, and this federal action followed.

## II. SUMMARY OF THE PLEADINGS

Consistent with Respondent's construction of the claims, which Petitioner does not meaningfully contest in his response to the motion for summary judgment,[2] the undersigned finds that Petitioner asserts the following claims in his application:

(1) The TCCA's decision on his state writ application, granting him relief on a double jeopardy violation, actually creates a double jeopardy violation;

(2) Overwhelming Proof of Actual and Legal Innocence;

(3) The State employed an unconstitutional scheme to gain convictions—to wit: the Texas statute on the law of parties impermissibly lowers the State's burden of proof;

(4) The State failed to prove the cause of death alleged in the indictment;

(5) The State lacked jurisdiction over his murder charge; and,

(6) Ineffective assistance of trial and appellate counsel based on the perceived jurisdictional defect in the capital murder conviction and in relation to the other grounds he alleges.

(Dkt. Entry No. 1 at 6–8; *see also* Dkt. Entry No. 2.)

---

[2] In his response, Petitioner asserts that the State failed to address certain claims in a meaningful way and did not adequately capture or describe all of his claims in its motion for summary judgment. (*See* Dkt. Entry No. 20 at 1.) Petitioner's assertions are conclusory and generic, and, at times, he is simply mistaken in his assessments, such as claiming erroneously that Respondent did not address his double jeopardy claim under *Smith v. Massachusetts*. (*See id.* at 4–5.)

Respondent argues that Claims 2 through 6 are barred by the statute of limitations under the Antiterrorism Effective Death Penalty Act ("AEDPA") and that Petitioner does not qualify for any form of tolling. (Dkt. Entry No. 19 at 6–8.) Respondent argues that Claim 1 lacks merit. (*Id.* at 8–10.) Petitioner filed a response to the motion for summary judgment, which the undersigned has reviewed and will address as necessary or relevant. (Dkt. Entry No. 20.)

### III. AEDPA'S STANDARD OF REVIEW

Under AEDPA, a "[c]ourt may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)–(2)). As stated by the Supreme Court of the United States, "[section] 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)). Under section 2254(d)(1), "contrary to" means that the state court applied a rule different from the governing law set forth in Supreme Court cases, or if the state court decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* "Unreasonable application" means that the state court correctly identified the correct governing legal principle from Supreme Court decisions, but the state court unreasonably applied the legal principle to the facts of the particular case. *Id.* An "unreasonable application" does not arise simply because the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court is presumed to be correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)) (internal quotations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

State courts are not required to explain their appellate or habeas decisions to be entitled to AEDPA deference, which means that, when the claims are adjudicated on the merits, section 2254(d) applies even if the state court summarily denied relief. *Cullen v. Pinholster*, 563 U.S. 170, 187–88 (2011); *Harrington*, 562 U.S. at 100.

## IV. RELEVANT LAW, ANALYSIS & CONCLUSIONS

**Claims 2, 3, 4, 5, and 6**

AEDPA's statute of limitations applies to Petitioner's application. *See Flanagan v. Johnson*, 154 F.3d 196, 199–200 (5th Cir. 1998) (stating that AEDPA applies to all habeas petitions filed after the Act's effective date, April 24, 1996).

AEDPA establishes a one-year statute of limitations for state prisoners seeking relief under 28 U.S.C. § 2254. The limitations period is codified at 28 U.S.C. § 2244(d)(1) as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA also contains a statutory tolling mechanism, which states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The undersigned finds that certain subsections under § 2244(d)(1) are inapplicable in this case, despite any arguments to the contrary by Petitioner. First, Claim 2 through 6 are not based on a constitutional right that was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Second, the record supports the conclusion that the factual predicates of these claims were apparent for a very long time because Claims 2 through 6 concern errors related to the trial, which occurred in 2000, and the direct appeal, which ended in 2007. Third, this case does not involve improper state action that impeded Petitioner from filing a timely federal petition.

Thus, the only relevant limitation provision is § 2244(d)(1)(A)—the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. Following the successful appeal by the State to the TCCA, the case was remanded back to the Thirteenth Court of Appeals, which subsequently affirmed the convictions on or around October 18, 2007. (*See* Dkt. Entry No. 19 at 6 n.4) *See also Rodriguez*, No, 13-00-771-CR, 2007 WL 3037910, at *1 (not designated for publication) (dated two days earlier). Petitioner did not appeal to the TCCA from that decision, but he had thirty days in which to do so. *See* Tex. R. App. P. 68.2(a); 4.1(a). Petitioner's state judgment became final within the meaning of AEDPA no later than Monday, November 19, 2007, after the expiration of the 30-day window for filing an appeal and accounting for the fact that the thirtieth day fell on a Sunday. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012) ("[T]he judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."). That event triggered the running of AEDPA's one-year window, and Petitioner's federal petition was due a year later in November 2008, absent tolling.

The undersigned finds that statutory tolling is not applicable in this case. *See* 28 U.S.C. § 2244(d)(2) (explaining that a properly filed application for state post-conviction or other collateral review will toll the limitations period while the application is pending). It is well-settled that statutory tolling is not available if a Texas prisoner files his state habeas application *after* the expiration of the one-year window under AEDPA. *E.g.*, *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Petitioner filed an initial state writ under Article 11.07 in April 2014, which was about 5.5 years after AEDPA's one-year window closed, so statutory tolling does not apply to his state writ.

Because the statute of limitations in AEDPA is not a jurisdictional bar, the doctrine of equitable tolling may apply to an untimely petition. *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court of the United States has stated that a habeas corpus petitioner seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way. *Id.* at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Only "reasonable diligence," not "maximum feasible diligence," is required. *Id.* at 653. Equitable tolling is considered on a case-by-case basis. *Id.* at 649.

"A garden variety claim of excusable neglect does not support equitable tolling." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). Although equitable tolling is determined on a case-by-case basis, it "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Id*. at 401–02 (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). The decision to invoke equitable tolling is left to the discretion of the district court, and such decisions are reviewed only for abuse of discretion. *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

The undersigned concludes that Petitioner fails to demonstrate any circumstances that would warrant equitable tolling. Petitioner does not address in any meaningful or persuasive way the issue of timeliness and equitable tolling in his § 2254 application, memorandum of law, and response to the summary judgment motion. Construing his pleadings liberally, the most he offers are (1) complaints of manipulation by the State in terms of the purported jurisdiction over the murder, its ability to use the kidnapping to establish jurisdictional and criminal liability for the murder, and its refusal to seriously address and recognize the merits of his claims; (2) an argument that the merits

of his double jeopardy claim make his other claims timely because they are all interrelated; and, (3) pleas about justice and his professed innocence. (*See, e.g.*, Dkt. Entry Nos. 2; 20.) The undersigned finds that the success Petitioner had on collateral review at the TCCA on the double-jeopardy claim does not weigh in favor of equitable tolling because he was not reasonably diligent in bringing his state claims in the first place, as explained below, and he fails to describe any exceptional circumstances that interfered with his ability to assert his collateral claims at the state level or the federal level. *See, e.g.*, *Holland*, 560 U.S. at 649 (explaining that a habeas corpus petitioner seeking equitable tolling bears the burden of establishing that *some extraordinary circumstance stood in his way*) (emphasis added). Instead, the record gives every indication that Petitioner simply never got around to pursuing habeas relief in a timely fashion.

In that regard, the record supports the conclusion that Petitioner was not reasonably diligent in pursuing his rights, which disqualifies Petitioner for equitable tolling. *See id.* (explaining that a habeas corpus petitioner seeking equitable tolling bears the burden of establishing that he has been pursuing his rights diligently). Petitioner waited 5.5 years before filing his first state application, which, in turn, resulted in the delay in filing his habeas petition in federal court. Nothing in the record suggests there was any persuasive reason for Petitioner to wait that long before pursuing collateral relief.

As for Petitioner's professed actual innocence, the undersigned finds that these allegations do not excuse his untimely federal claims. In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–33 (2013), the United States Supreme Court held that a prisoner filing an initial federal habeas petition is not automatically barred under AEDPA's one-year statute of limitations if the petitioner is able to make a showing of actual innocence, which requires a showing that "it is more likely than not,

in light of new and reliable evidence, that no reasonable juror would have found the defendant guilty." Petitioner's professed innocence is predicated, first, on his personal opinion that because the TCCA vacated the aggravated kidnapping conviction, there is no longer any way to establish criminal liability for capital murder, which depended on the government proving kidnapping as an element. Second, Petitioner continues to assert, as he did in the state courts, that jurisdiction is lacking on the capital murder charge because the murder occurred in Mexico. Third, Petitioner believes that the TCCA's initial habeas decision, which ordered the trial court to "acquit" Petitioner of aggravated kidnapping, caused a double jeopardy violation, which, if remedied on federal habeas review, means the sole remaining conviction for capital murder will disappear. Petitioner's professed innocence does not rest on new and reliable evidence. First, his theories of innocence *are* his federal habeas claims. Petitioner's professed "legal and factual innocence," at a minimum, is entirely contingent on the successful outcome of his substantive claims on federal habeas review. That is not convincing evidence of his innocence. Second, the vacation of the aggravated kidnapping conviction by the TCCA does not amount to evidence or represent an implied finding of Petitioner's actual innocence of the underlying criminal activity, including the kidnapping, that forms the basis of the remaining conviction for capital murder. Rather, the remedial action by the TCCA in vacating the kidnapping conviction reflects, at most, the TCCA's judgment that a double jeopardy violation occurred.

In summary, Petitioner's Claims 2, 3, 4, 5, and 6 are time-barred under AEDPA. Equitable tolling is not warranted in this case due to the absence of both extraordinary circumstances and reasonable diligence, and Petitioner fails to meet the innocence exception set forth in *McQuiggin*. Claims 2 through 6 should be denied and dismissed with prejudice as time-barred.

**Claim 1**

In his first claim, Petitioner complains about the TCCA's decision to *grant* state habeas relief for the double jeopardy claim Petitioner presented on state habeas review. More specifically, Petitioner argues that the TCCA's original habeas opinion, which ordered the trial court to enter a judgment of acquittal as to the aggravated kidnapping conviction, resulted in a double jeopardy violation under the holding in *Smith v. Massachusetts*, 125 S. Ct. 1129, 1137 (2005). Respondent argues that the claim lacks merit because the TCCA did not "acquit" Petitioner of kidnapping.

*Timeliness*

At the outset, the undersigned addresses the issue of the timeliness of this claim. Although Respondent raised the statute-of-limitations defense as to Claims 2 through 6, Respondent does not argue Claim 1 is untimely under AEDPA. Instead, Respondent goes directly to the merits of the claim. There is case law that supports the conclusion that Claim 1 is time-barred. *See Matthis v. Cain*, 627 F.3d 1001, 1002 (5th Cir. 2010) ("Because the overturning and reinstatement of Appellant's conviction occurred solely through post-conviction review, we find that this did not affect the date his conviction became final under direct review and thus his federal habeas petition was untimely."); *Ybanez v. Johnson*, 204 F.3d 645, 646 (5th Cir. 2000) (holding that "errors in a state court's disposition of a state habeas application" do not come within the "factual predicate" provision under § 2244(d)(1)(D)). Because Respondent does not assert that Claim 1 is untimely under AEDPA, the undersigned will bypass the issue. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) (holding that "district courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition").

12

*The Merits*

The undersigned agrees with Respondent's general position that this claim lacks substantive merit. The undersigned makes the following findings in support.

At the outset, the undersigned takes a moment to discuss the TCCA's subsequent, reworded decision, which granted relief for the double jeopardy violation it found. The new decision did not include the word "acquitted," as the previous decision had. In its place, the new decision ordered that the aggravated kidnapping conviction was "vacated." The TCCA did not explain its reason for correcting the language when it withdrew its first opinion and issued a new one. In all likelihood, which Respondent points out as well, it was to correct the language of the opinion so that it accurately reflected the remedy the TCCA orders when a double jeopardy violation of this nature occurs, which is to affirm the conviction for the most serious offense and vacate the duplicitous conviction and sentence, *e.g., Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). "The most serious offense is the offense of conviction for which the greatest sentence was assessed." *Ex Parte Denton*, 399 S.W.3d 540, 547 (Tex. Crim. App. 2013). The record and state case law support this reasonable inference.

The undersigned finds that Claim 1 lacks merit because it is non-cognizable or fails to raise a claim that is amenable to federal habeas review and relief. When the TCCA withdrew its original habeas decision and issued a superseding decision before the mandate, it did so within the paradigm of the laws and rules of procedure of the State of Texas and its courts—in the context of a state habeas proceeding under the Texas Code of Criminal Procedure. Petitioner's first claim is nothing more than a complaint about an infirmity in his state habeas proceeding. It is well-established that

13

infirmities in state habeas proceedings do not provide a basis for federal habeas relief. *E.g.*, *In re Gentras,* 666 F.3d 910, 911 (5th Cir. 2012) (holding that the state prisoner's claims concerning "the Louisiana courts' procedures for addressing postconviction petitions" were not cognizable under § 2254 because they amounted to complaints about infirmities in state habeas proceedings); *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004) (explaining that "an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself"); *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (reiterating that infirmities in state habeas proceedings do not constitute grounds for federal habeas relief). Further, this claim does not come within the purview of § 2254 because the TCCA's decision to withdraw its initial habeas ruling and issue a new one amounts to a determination by the TCCA on a state law matter (*e.g.*, its authority to withdraw a habeas opinion and issue a superseding opinion prior to the mandate), and Petitioner fails to explain or demonstrate that the U.S. Constitution and federal law have been implicated. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (stating that it is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *see also Hartfield v. Thaler*, 498 Fed. App'x 440, 441, 2012 WL 5942999, at *1 (5th Cir. Nov. 28, 2012) (per curiam) (certifying question to TCCA about an "important and determinative question of Texas law" which involved the legal effect of the TCCA issuing a mandate shortly before the executive branch commuted the sentence). Although Petitioner presents his claim under the auspices of *Smith v. Massachusetts* and the Double Jeopardy Clause, it does not transform Petitioner's complaint into a cognizable, redressable claim under § 2254.

Petitioner's claim lacks merit for other reasons as well. "The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.'" *Jones v. Thomas*, 491 U.S. 376, 380–81 (1989). "The Clause affords three protections to the criminal defendant." *Id.* "The first two, which are the most familiar, protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction." *Id.* The third protection is "against 'multiple punishments for the same offense' imposed in a single proceeding." *Id.*

As Respondent points out, *Smith v. Massachusetts*, 543 U.S. 462, does not supply a basis for relief. *Smith* involved a *pre-verdict* acquittal under the Double Jeopardy Clause. More specifically, the Supreme Court described the facts and issue in *Smith* as follows: "Midway through a jury trial, the judge acquitted petitioner of one of the three offenses charged. The question presented in this case is whether the Double Jeopardy Clause forbade the judge to reconsider that acquittal later in the trial." *Id.* at 464. Petitioner's case does not look anything like the issue and fact pattern in *Smith*. Petitioner was never "acquitted" in the trial court. Petitioner's case involved two convictions for the same conduct, which were secured at the same trial, and the concomitant imposition of sentences for each conviction. Most importantly, Petitioner's claim concerns the state's highest criminal court's choice of words in its order granting Petitioner relief on *collateral* review—well after the convictions were final. Nothing about the *Smith* case reasonably supports Petitioner's claim. The *Smith* decision does not stand for the broad or direct proposition that a state *habeas* court *granting* relief for a double jeopardy violation can cause yet another double jeopardy violation if it uses the wrong word when setting forth in its written decision the remedy for the violation. In other words, *Smith* does not support the conclusion that the TCCA, on state collateral review after

15

Petitioner's convictions were final, caused a double jeopardy violation because it inadvertently ordered the trial court to "acquit" Petitioner of aggravated kidnapping, yet later superseded that order with an opinion that stated the kidnapping conviction must be "vacated." The disposition of Petitioner's first claim does not turn on *Smith* and the Double Jeopardy Clause; rather, it turns on the well-settled principle that infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief.

Petitioner's convictions were final, caused a double jeopardy violation because it inadvertently ordered the trial court to "acquit" Petitioner of aggravated kidnapping, yet later superseded that order with an opinion that stated the kidnapping conviction must be "vacated." The disposition of Petitioner's first claim does not turn on *Smith* and the Double Jeopardy Clause; rather, it turns on the well-settled principle that infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief.

Moreover, Petitioner's reliance on *Smith v. Massachusetts* is misplaced to the extent he believes the case (or any other case) leads to the inevitable conclusion that his *capital murder* conviction must be set aside or vacated under the circumstances (in addition to the aggravated kidnapping conviction being vacated), which is what he really wants.

Even assuming arguendo that this claim is cognizable under § 2254, there was nothing unreasonable or contrary about the state court's adjudication of Petitioner's claim for the purposes of AEDPA.[3] First, there is simply no established precedent by the Supreme Court that (1) reasonably supports the conclusion that the TCCA's actions/rulings on collateral review caused a double jeopardy violation or (2) entitles Petitioner to the vacation of all his convictions under the Double Jeopardy Clause. *See, e.g.*, *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ('[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply

---

[3] Petitioner fails to overcome the presumption that the TCCA adjudicated this claim on the merits when it denied Petitioner's request to amend the original habeas decision and that it is entitled to AEDPA deference. *See Hoffman v. Cain*, 752 F.3d 430, 438–39 (5th Cir. 2014) (explaining that there is a presumption that a state court's decision is an adjudication on the merits and that the parties have the burden of showing the federal habeas court should *not* give deference under AEDPA). The fact that the Petitioner's motion prompted the TCCA to withdraw its original decision and issue a superseding opinion to remove the word "acquit" strongly suggests the TCCA considered Petitioner's claim on some level.

16

a specific legal rule that has not been squarely established by this Court."); *Pinholster*, 563 U.S. at 188 ("[A] habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."); *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (explaining that, under section 2254(d)(2), "[i]t is not enough to show that a state court's decision was incorrect or erroneous"). Second, having concluded that the convictions for both aggravated kidnapping and capital murder for murder in the course of an aggravated kidnapping violate the prohibition on double jeopardy, and having considered Petitioner's claim in his motion to amend the habeas decision, the TCCA's ultimate, superseding decision to vacate (only) Petitioner's kidnapping conviction was entirely reasonable under established precedent and the circumstances. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977) (explaining that the Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal," "protects against a second prosecution for the same offense after conviction," and "protects against multiple punishments for the same offense"); *Jones*, 491 U.S. at 382 & n.2 (explaining that, because the duplicitous conviction and sentence were vacated, the petitioner was "now serving only a single sentence for a single offense," and the petitioner had, "[u]nder any view of the substantive content of the double jeopardy bar against multiple punishments," "every benefit the Clause affords"); *see also In re Lampton*, 667 F.3d 585, 588 (5th Cir. 2012) ("It has long been the law of this Circuit that where a defendant has been improperly convicted of and sentenced on both a greater offense and a lesser-included offense, the proper remedy is to vacate both the conviction and sentence on the included offense, leaving the conviction and sentence on the greater offense intact.") (citing, among other cases, *Ball v. United States*, 470

U.S. 856, 864 (1985)); *Davis v. Thaler,* 373 F. App'x 446, 450–51, 2010 WL 1439758, at *4 (5th Cir. 2010) (unpublished) (explaining that the "remedy in both federal and Texas state courts for a defendant subjected to multiple punishments for the same conduct is to affirm the conviction for the most serious offense and vacate the other included conviction" and citing *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008), for the proposition that, in Texas, "[t]he most serious offense is the offense in which the greatest sentence was assessed"). The undersigned finds alternatively that the cases cited throughout this Report support the conclusion that Petitioner's claim lacks substantive merit under *de novo* review. *See Hoffman*, 752 F.3d at 437 (stating that a federal habeas court reviews a § 2254 claim *de novo* when AEDPA's deferential standards are not applied to it).

Based on the foregoing, the Court should conclude that Petitioner is not entitled to federal habeas relief for this claim. Claim 1 should be denied and dismissed because it is non-cognizable and, in addition, lacks merit under any standard of review.

## V.  CONCLUSION

### *Recommended Disposition*

After careful review of the record and applicable law, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Dkt. Entry No. 19) be **GRANTED** to the extent it is consistent with this Report, Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice, and the case be closed.

The undersigned also respectfully recommends that the District Court deny a Certificate of Appealability upon issuance of its final order in this section 2254 proceeding. The undersigned finds that the record supports the conclusion that Petitioner fails to show:  (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong" or (2) that

reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)).

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 29th day of June, 2016.

\_\_\_\_ *Dorina Ramos* \_\_\_\_
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE